# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OMAR FOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cv-3232 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| FIFTH THIRD BANK, FIFTH THIRD ) | |
| HOLDINGS, LLC, FIFTH THIRD ) | |
| HOME LENDING CORP., FIFTH ) | |
| THIRD A CORP., FIFTH THIRD ) | |
| MORTGAGE COMPANY and PETER ) | |
| ANDREOTTI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Omar Fox ("Plaintiff") brings suit against Defendants Fifth Third Bank, Fifth Third Holdings, LLC, Fifth Third Home Lending Corp., Fifth Third A Corp., Fifth Third Mortgage Company (collectively, "Fifth Third") and Peter Andreotti ("Andreotti") for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866, as amended ("Section 1981"), as well a claim for violation of the Illinois Wage Payment and Collection Act. Currently before the Court are Fifth Third's [10] and Andreotti's [25] motions to dismiss the complaint for failure to state a claim. For the reasons that follow, both motions, [10], [25], are denied. This case is set for status hearing on April 23, 2020 at 9:30 a.m. Counsel are directed to file a joint status report, including a discovery plan and a statement of whether any settlement talks have occurred and whether the parties request an early settlement conference, no later than April 20, 2020.

## I. Background[1]

Plaintiff is a former employee of Fifth Third who began working for the company as a loan officer in January 2014. Andreotti is Fifth Third's hiring manager and interviewed Plaintiff for his job. Plaintiff was assigned to Fifth Third's Oak Park financial center, which has been designated a Low or Moderate Income Zone ("LMI Zone") by the Secretary of the Department of Agriculture. Plaintiff was also assigned to share the Melrose Park assignment with another loan officer. Melrose Park is also an LMI Zone.

According to the complaint, Fifth Third Bank did not pay loan officers a typical salary. Instead, the bank paid loan officers $24,000 per year as a draw against commissions—meaning that the first $24,000 in commissions a loan officer generates is kept by the bank, and the loan officer keeps only commissions earned in excess of $24,000. In addition, Fifth Third deducted from loan officers' salaries the $350 cost of the loan application or appraisal fee in the event a customer who completed an application did not actually close the loan. Loan officers, including Plaintiff, relied on bankers in the branches where they were assigned to refer potential mortgage customers.

The complaint alleges that, given the above-described structure and constraints, a loan officer's job success and compensation hinges on being assigned financial centers in affluent and high traffic neighborhoods. Plaintiff raised this concern with Andreotti and was unofficially assigned to another location, the Brickyard branch. However, the Brickyard branch is also in an LMI zone. The complaint alleges that as the months went on, it became increasingly clear to Plaintiff (1) "that a loan officer's success was directly tied to being assigned financial centers in affluent neighborhoods in high foot-traffic areas," and, (2) that Fifth Third, acting through

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiff's complaint [1]. See *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

Andreotti, "was assigning white loan officers to financial centers in affluent neighborhoods and non-white loan officers to branches in low to moderate income neighborhoods." [1] at 5. As a result, Plaintiff alleges, he was making less compensation that white loan officers.

In February 2015, after trying but failing to work "within the system to move to a financial center in a more affluent neighborhood," Plaintiff decided to apply for a loan officer position in Fifth Third's Wilmette financial center, which is in an affluent suburb of Chicago. [1] at 6. According to Plaintiff, when he asked Andreotti for support, Andreotti falsely told Plaintiff that the position had been filled, even though it remained open for months thereafter.

On February 19, 2015, Plaintiff told Andreotti in a face-to-face meeting that "there were racial disparities in financial center assignments that w[ere] impacting the ability of non-white loan officers, like himself, to succeed and make money" and also "presented Andreotti with the list of branch assignments and pointed out to him how the loan officers of color were all assigned to financial centers in LMI Zones." [1] at 7. Andreotti allegedly responded that that non-white employees were the "best fit" for being relatable to the people who lived in LMI Zones and that there was nothing discriminatory about that, and refused to consider re-assigning branches based on non-racial criteria. *Id*. Plaintiff also complained that Andreotti would not approve overtime for him while approving it for white loan officers, and that Andreotti limited and scrutinized Plaintiff's monthly expenses much more than those of white loan officers.

On February 26, 2015, a week after Plaintiff complained, Andreotti asked Plaintiff to help cover Fifth Third financial centers in the Northwest suburbs, which were in affluent neighborhoods including Barrington. As soon as Plaintiff began receiving leads from Barrington and nearby financial centers in the Northwest suburbs, his sales increased.

On April 3, 2015, Plaintiff asked Andreotti to permanently assign him to the Barrington and nearby financial centers. When Andreotti refused, Plaintiff again brought up the racial disparities in financial centers assignments.

On April 20, 2015, Fifth Third, acting through Andreotti, placed Plaintiff on a Performance Improvement Plan, under which he was required to close four loans per month. On May 11, 2015, Plaintiff "raised with Andreotti the racial disparity in financial centers assignments that impacted him and other loan officers of color," and Andreotti again "swept [Plaintiff's] concerns under the table." [1] at 8. On May 15, 2015—less than thirty days after placing him on the performance plan—Fifth Third terminated Plaintiff. Andreotti allegedly told Plaintiff that he was being fired because he could not meet the terms of the performance plan. However, at the time of Plaintiff's termination, his "month-to-date numbers for applications taken equaled or exceeded each of his white male colleagues" and his "month-to date numbers for dollars booked in closings exceeded at least four of his white male colleagues." *Id*. at 9. Thus, according to Plaintiff, he was on pace to meet the requirements of his Performance Improvement Plan. Yet Fifth Third did not give him even thirty days to perform under the Performance Improvement Plan. Finally, Plaintiff alleges that Fifth Third failed to pay the final wages due to him, including commissions, when he was terminated.

Based on these facts, Plaintiff alleges Title VII claims against Fifth Third for discrimination on the basis of race (Count I) and retaliation (Count III), Title 1981 claims against Fifth Third and Andreotti for discrimination (Count II) and retaliation (Count IV), and a claim against Fifth Third for violation of the Illinois Wage Payment and Collection Act (Count V).

## II. Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the amended complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). It is also proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.2012)); see also Fed. R. Civ. P. 10(c).

## III. Analysis

### A. Title VII Claims

Fifth Third argues that Plaintiff's Title VII claims are time-barred due to Plaintiff's alleged failure to file a charge of discrimination with the EEOC within 300 days of the adverse action alleged in this case. Instead, according to Fifth Third, Plaintiff waited 364 days after his termination to file his EEOC charge.

Fifth Third's argument cannot be resolved on a motion to dismiss. It is true that, "[b]efore bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Chaidez v. Ford Motor Company*, 937 F.3d 998, 1004 (7th Cir. 2019) (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). After a plaintiff receives the right to sue letter, he or she may bring in federal court "only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005). However, "Title VII's charge-filing requirement is not … jurisdictional," *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1850 (2019), but rather is "a precondition to bringing a Title VII claim in federal court." *Burgett v. U.S. Dep't of Treasury*, 603 F. Supp. 2d 1152, 1156 (N.D. Ill. 2009). Thus, "a plaintiff can present equitable reasons for failing to comply with the exhaustion requirements," *id.*, such as "waiver, estoppel and equitable tolling." *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001). Failure to "timely file an administrative charge is an affirmative defense, and plaintiffs need not plead around affirmative defenses." *Garrick v. Moody Bible Institute*, 412 F. Supp. 3d 859, 867-68 (N.D. Ill. 2019). "Unless the complaint 'unambiguously establish[es] all the elements of the defense,' dismissal is inappropriate." *Id.* at 868 (quoting *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016)) (denying motion to dismiss Title VII claim for failure to exhaust where the complaint was "silent on whether [the plaintiff] filed allegations with the state agency").

In this case, neither the complaint nor any documents properly before the Court unambiguously establish that Plaintiff failed to file a timely EEOC charge, or eliminate the possibility that Plaintiff's alleged failure to timely file should be excused by the application of one or more equitable doctrines. The complaint alleges that Plaintiff filed a timely charge with the

6

EEOC and received a right to sue letter, but does not attach the charge or provide any details about when it was filed or what information it contained. See [1] at 11, 12. Defendants attach to their motion to dismiss a copy of what they contend is the charge referred to in the complaint. See [12-1] (copy of purported charge); [12] (declaration of Fifth Third's outside counsel stating that the attached document is "[a] true and correct copy of a charge document from Mr. Fox's Charge of Discrimination filed with the [EEOC]"). Defendants argue that it is proper for the Court to consider this purported EEOC charge because it is central to the complaint and referred to in it.

"[O]ther courts in this district have concluded that EEOC charges are central to Title VII claims," and therefore properly considered when submitted by a defendant in support of a motion to dismiss. *Drebing v. Provo Group, Inc*., 494 F. Supp. 2d 910, 912 (N.D. Ill. 2007). However, that is not an appropriate course under the facts of this case. The purported charge has not been properly authenticated, and Plaintiff denies that the charge is the one he was referring to in his complaint. See [18] at 5. Plaintiff also correctly points out that "the charge filing requirement may be satisfied by documents other than one formally titled 'Charge of Discrimination,' such as documents informally submitted and/or with an EEOC Intake Questionnaire." *Id*.; see also *Philbin v. Gen. Electric Capital Auto Lease, Inc.,* 929 F.2d 321, 323-24 (7th Cir. 1991) (per curiam) (holding that EEOC intake questionnaire satisfied statutory charge filing requirement under the facts of that case); *McClendon v. Illinois Dep't of Transp.*, 181 F. Supp. 3d 578, 589 (N.D. Ill. 2015) (holding that 3-page complaint filed with EEOC and completed intake questionnaire satisfied Title VII's charge filing requirement). Plaintiff maintains that "[w]hat discovery will reveal" is that he "met with EEOC officials shortly after he was fired." [18] at 6. He concludes that, "[w]hat documents and information he provided the EEOC and what action the EEOC took

on his behalf remains to be seen in discovery." *Id*. Given these allegations, there is no way for the Court to resolve Defendants' exhaustion argument at the motion to dismiss stage.

Fifth Third criticizes Plaintiff for not including additional details about his purported charge in his response to the motion to dismiss, arguing that Plaintiff was under an obligation to do so because he knew there was a chance that the Court would choose to convert the motion to dismiss into a motion for summary judgment. The Court finds this criticism unwarranted. Plaintiff's position is that discovery is needed before the exhaustion issue (an affirmative defense, not an element of his claim) can be resolved. Even if Fifth Third had filed a proper motion for summary judgment—including the Local Rule 56.1 statement that is required in this district—Plaintiff could have submitted "an affidavit or declaration requesting the court to defer or deny judgment in order to allow for appropriate discovery to address matters raised by the motion." *Spierer v. Rossman*, 798 F.3d 502, 506-07 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(d)).

Since Fifth Third has not established that the purported charge attached to its motion to dismiss is the governing charge in this case, the Court also must deny Fifth Third's motion to dismiss to the extent that it argues that Plaintiff's Title VII claims were not properly included in the charge.

### B. Compensation Plans

Fifth Third and Andreotti move to dismiss all of Plaintiff's claims on the basis of "Compensation Plans" that Plaintiff purportedly signed when he was employed by Fifth Third. According to Fifth Third, the Compensation Plans "provide that all employment related claims must be filed within six months of an adverse employment action," which Plaintiff failed to do. [19] at 9.

8

The Court denies Defendants' motions to dismiss because the Compensation Plans are not properly before the Court and, even if they were, Defendants have not demonstrated as a matter of law that Plaintiff is subject to those agreements. The Compensation Plans are not "attached to the complaint." *Williamson*, 714 F.3d at 436. Andreotti argues that the Compensation Plans are "referred to" in the complaint, *id.*, because the complaint references commissions and Fifth Third's compensation model and it was "only through the [Compensation Plans] that Plaintiff received incentive compensation." [30] at 6. But that is not alleged in the complaint, nor admitted by Plaintiff, and cannot be determined with any level of confidence based on the materials provided.

Fifth Third claims that the Compensation Plans are "central to the complaint," *Williamson*, 714 F.3d at 436, given that Plaintiff is challenging the compensation he received from Fifth Third. Plaintiff denies this and states that he "intends to vehemently challenge" the applicability of the Compensation Plans on the basis that there was no acceptance or consideration. In their reply brief, Fifth Third, relying on an affidavit from their Senior Compensation Manager, argues that the Compensation Plans were accepted by Plaintiff and supported by consideration, and therefore bar Plaintiff's late-filed claims. However, all the reply does is create additional factual disputes that cannot be resolved on a motion to dismiss.

## IV. Conclusion

For these reasons, Fifth Third's motion to dismiss [10] and Andreotti's motion to dismiss [25] are both denied. This case is set for status hearing on April 23, 2020 at 9:30 a.m. Counsel are directed to file a joint status report, including a discovery plan and a statement of whether any settlement talks have occurred and whether the parties request an early settlement conference, no later than April 20, 2020.

Dated: March 23, 2020

_____
Robert M. Dow, Jr.
United States District Judge